John J. Kastner, Jr. - State Bar No. 021529
jkastner@jsslaw.com
Jay A. Fradkin – State Bar No. 006864
jfradkin@jsslaw.com
JENNINGS, STROUSS & SALMON, P.L.C.
A Professional Limited Liability Company
1760 E. River Road, Suite 230
Tucson, AZ 85718-5990
(520) 618-1051
Fax: (520) 618-1071

MinuteEntries@jsslaw.com

Steven J. Boranian*
sboranian@reedsmith.com
REED SMITH LLP
101 Second Street, Suite 1800
San Francisco, CA 94105
Telephone: (415) 543-8700
Fax: (415) 391-8269

*To be admitted pro hac vice.

Attorneys for Defendant
AmerisourceBergen Drug Corporation

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Tucson Medical Center, a corporation,<br><br>Plaintiff,<br><br>vs.<br><br>Purdue Pharma L.P.; Purdue Pharma, Inc.; The Purdue Frederick Company Inc.; Amneal Pharmaceuticals, LLC n/k/a Amneal Pharmaceuticals, Inc.; Teva Pharmaceuticals USA, Inc.;  Cephalon, Inc.; Johnson & Johnson; Janssen Pharmaceuticals, Inc.; Ortho-McNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Abbott Laboratories; Abbott Laboratories, Inc.; Depomed, Inc. n/k/a Assertio Therapeutics, Inc.; Endo Health Solutions Inc.; Endo Pharmaceuticals Inc.; Mallinckrodt, LLC; Insys Therapeutics, Inc.; Noramco, Inc.; Mallinckrodt plc; SpecGx LLC; Allergan PLC f/k/a Actavis PLS; Watson Pharmaceuticals, Inc. n/k/a Actavis Inc.; | No. _____<br><br><br>**NOTICE OF REMOVAL**<br><br>**(Honorable _____                  )** |

Watson Laboratories, Inc.; Actavis LLC.;
Actavis Pharma, Inc. f/k/a Watson Pharma,
Inc.; Anda, Inc.; H.D. Smith, LLC f/k/a
H.D. Smith Wholesale Drug Co.; Henry
Schein, Inc.; AmerisourceBergen Drug
Corporation; and Cardinal Health, Inc.,

Defendants.

PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. §§ 1331, 1441, 1446, and 1367, Defendant AmerisourceBergen Drug Corporation ("AmerisourceBergen") has removed the above-captioned action from the Superior Court of the State of Arizona in and for the County of Pima, Arizona to the United States District Court for the District of Arizona.  As grounds for removal, AmerisourceBergen states:

**I.     Nature of Removed Action**

1.      On October 9, 2018, Tucson Medical Center ("Plaintiff") filed *Tucson Medical Center v. Purdue Pharma L.P., et al.* in the Superior Court of the State of Arizona in and for the County of Pima.  The court assigned the Case No. C20184991.

2.      Plaintiff originally filed this Complaint in the Superior Court of the State of Arizona in and for the County of Pima on August 24, 2018.  *See* Case No. C20184213. AmerisourceBergen removed that case to this Court on September 25, 2018 based on federal-question jurisdiction, and McKesson Corporation removed the case based on federal officer grounds.  *See* Case No. 4:18-cv-481-RCC [Docs. 1, 13].  On October 5, 2018, the United States District Court of Arizona held that the case should be stayed pending a ruling by the JPML regarding transfer to the MDL.  [Doc. 50].  On October 8, 2018, one day before filing this Complaint, Plaintiff voluntarily dismissed the case.  On October 9, 2018, Plaintiff re-filed this Complaint in the Superior Court of the State of Arizona with many direct references to federal law removed and omitting McKesson as a defendant to avoid a removal based on federal officer grounds in what appears to be an obvious attempt to manipulate the forum.

3.      The current Complaint asserts claims against two groups of Defendants. (Complaint ("Compl."), attached as **Exhibit 1**).

6345439v1(68026.1)

4.      The first group of defendants consists of Purdue Pharma L.P.; Purdue Pharma, Inc.; The Purdue Frederick Company Inc.; Amneal Pharmaceuticals, LLC n/k/a Amneal Pharmaceuticals, Inc.; Teva Pharmaceuticals USA, Inc.; Cephalon, Inc.; Johnson & Johnson; Janssen Pharmaceuticals, Inc.; Ortho-McNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Abbott Laboratories; Abbott Laboratories Inc.; Depomed, Inc. n/k/a Assertio Therapeutics, Inc.; Endo Health Solutions Inc.; Endo Pharmaceuticals Inc.; Mallinckrodt LLC; Insys Therapeutics, Inc.; Noramco, Inc.; Mallinckrodt plc; SpecGx LLC; Allergan plc f/k/a Actavis plc; Allergan Finance, LLC f/k/a Actavis, Inc. f/k/a Watson Pharmaceuticals, Inc. n/k/a Actavis Inc.; Watson Laboratories, Inc.; Actavis LLC; and Actavis Pharma, Inc. f/k/a Watson Pharma, Inc. (collectively referred to by Plaintiff as "Marketing Defendants").[1]

5.      The second group of defendants consists of AmerisourceBergen Drug Corporation; Anda, Inc.; H.D. Smith, LLC f/k/a H.D. Smith Wholesale Drug Co.; Henry Schein, Inc.; and Cardinal Health, Inc. (collectively, "Distributor Defendants").

6.      The Complaint asserts eleven counts against AmerisourceBergen and the other Distributor Defendants:   violations of the Arizona RICO Act (Claim I); violations of Arizona's Consumer Fraud Act (Claim II); negligence (Claim III); wanton negligence (Claim IV); negligence per se (Claim V); negligent distribution (Claim VII); nuisance (Claim VIII); unjust enrichment (Claim IX); fraud and deceit (Claim X); civil conspiracy to commit fraud and maintain a nuisance (Claim XI); and fraudulent concealment (Claim XII).   *See* Compl. ¶¶ 783-845, 859-952, Claims for Relief.

7.      In support of its causes of action, Plaintiff pleads, among other things, that federal laws and regulations require defendants to "identify and report 'orders of unusual size, orders deviating substantially from a normal pattern, and orders of unusual frequency.'" *See, e.g.*, Compl., ¶¶ 755 (citing 21 C.F.R. §1301.74(b)), 533, 620.

8.      Because the duties governing reporting and shipping "suspicious" or "unusual"

---

[1] Noramco joins in the Notice but Noramco does not (and did not at all material times relevant hereto) manufacture, package, brand, market, distribute, or sell the finished drug products at issue in this litigation.

1  opioid orders arise from the federal Controlled Substances Act ("CSA"), and its

2  implementing regulations, Plaintiff pleads that alleged violations of federal law form the

3  basis for its claims.

4      9.     On December 5, 2017, the Judicial Panel on Multidistrict Litigation ("JPML")

5  formed a multidistrict litigation ("MDL") and transferred opioid-related actions to Judge Dan

6  Polster in the Northern District of Ohio pursuant to 28 U.S.C. § 1407.  *See In re Nat'l*

7  *Prescription Opiate Litig.*, MDL No. 2804 (J.P.M.L. Dec. 5, 2017), ECF No. 328.  More

8  than 1,150 opioid-related actions are pending in the MDL, including actions originally filed

9  in this District.[2]  AmerisourceBergen intends to tag this case immediately for transfer to the

10 MDL.

11 **II.    Timeliness of Removal**

12     10.    AmerisourceBergen was served with the Complaint on October 10, 2018.  (*See*

13 **Exhibit 2**).

14     11.    In accordance with 28 U.S.C. § 1446(b), this notice of removal is timely filed

15 within 30 days of service of Plaintiff's Complaint.  *See Murphy Bros., Inc. v. Michetti Pipe*

16 *Stringing, Inc.*, 526 U.S. 344, 354-56 (1999) (30-day removal period begins to run upon

17 service of summons and complaint).

18     12.    "If defendants are served at different times, and a later-served defendant files a

19 notice of removal, any earlier-served defendant may consent to the removal even though that

20 earlier-served defendant did not previously initiate or consent to removal."  28 U.S.C. §

21 1446(b)(2)(C).

22 **III.   Propriety of Venue**

23     13.    Venue is proper in this Court pursuant to 28 U.S.C. § 1441(a) because the

24 court where the state court action was pending prior to removal is a state court within this

---

25 [2]  *See, e.g.*, *Kingman, City of v. Purdue Pharma LP*, No. 3:18-cv-08191 (D. Ariz.)
26 (transferred to the MDL on September 12, 2018); *Hopkins v. Purdue Pharma LP*, No. 2:18-
   cv-02646 (D. Ariz.) (transferred to the MDL on September 5, 2018); *Northwest Arizona*
27 *Employee Benefit Trust v. Purdue Pharma LP*, No. 3:18-cv-08190 (D. Ariz.) (transferred to
   the MDL on September 5, 2018); *National Roofers Union & Employers Joint Health &*
28 *Welfare Fund v. Purdue Pharma LP*, No. 2:18-cv-01949 (D. Ariz.) (transferred to the MDL
   on July 16, 2018).

1    federal district and division.

2    **IV.   Basis of Removal**

3            14.    Removal is proper pursuant to 28 U.S.C. §§ 1441 and 1331 because Plaintiff's

4    claims present a substantial federal question under the Controlled Substances Act ("CSA"),

5    21 U.S.C. § 801, *et seq*.[3]

6            15.    The original jurisdiction of the district courts includes jurisdiction over "all

7    civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C.

8    § 1331.

9            16.    "Whether a case 'arises under' federal law for purposes of § 1331" is governed

10   by the "well-pleaded complaint rule."  *Holmes Grp., Inc. v. Vornado Air Circulation Sys.,*

11   *Inc.*, 535 U.S. 826, 830, 839 (2002).

12           17.    Even when state law creates the causes of action, a complaint may raise a

13   substantial question of federal law sufficient to warrant removal if "vindication of a right

14   under state law necessarily turn[s] on some construction of federal law."  *Merrell Dow*

15   *Pharm. Inc., v. Thompson*, 478 U.S. 804, 808-09 (1986) (citation omitted); *see Gully v. First*

16   *Nat'l Bank*, 299 U.S. 109, 112 (1936) ("To bring a case within [§ 1441], a right or immunity

17   created by the Constitution or laws of the United States must be an element, and an essential

18   [3] A defendant need not overcome any artificial presumptions against removal or in favor of
19   remand.  In *Breuer v. Jim's Concrete of Brevard, Inc.*, 538 U.S. 691 (2003), the Supreme
     Court unanimously held that the 1948 amendments to the general federal removal statute, 28
20   U.S.C. § 1441(a), trumped the Court's prior teachings in *Shamrock Oil & Gas Corp. v.*
     *Sheets*, 313 U.S. 100 (1941), and its antecedents, that federal jurisdictional statutes must be
21   strictly construed against any recognition of federal subject matter jurisdiction, with every
     presumption indulged in favor of remand.  *Id.* at 697-98 ("[W]hatever apparent force this
22   argument [of strict construction against removal] might have claimed when *Shamrock* was
     handed down has been qualified by later statutory development. . . . Since 1948, therefore,
23   there has been no question that whenever the subject matter of an action qualifies it for
     removal, *the burden is on a plaintiff to find an express exception.*"  (emphasis added)); *see*
24   *also Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 558 (2005) (construing
     1990 enactment of 28 U.S.C. § 1367, authorizing supplemental federal subject matter
25   jurisdiction, holding: "We must not give jurisdictional statutes a more expansive
     interpretation than their text warrants; but it is just as important not to adopt an artificial
26   construction that is narrower than what the text provides. . . . Ordinary principles of statutory
     construction apply." (citation omitted)).  More recently, a unanimous Supreme Court in
27   *Mims v. Arrow Financial Services, LLC* held: "Divestment of district court jurisdiction
     should be found no more readily than divestment of state court jurisdiction, given the
28   longstanding and explicit grant of federal question jurisdiction in 28 U.S.C. § 1331."  565
     U.S. 368, 379 (2012) (brackets and citations omitted).

one, of the plaintiff's cause of action.").

18. "[F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013); *see Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 315 (2005). "Where all four of these requirements are met . . . jurisdiction is proper because there is a 'serious federal interest in claiming the advantages thought to be inherent in a federal forum,' which can be vindicated without disrupting Congress's intended division of labor between state and federal courts." *Gunn*, 548 U.S. at 258; *see also One & Ken Valley Hous. Grp. v. Maine State Hous. Auth.*, 716 F.3d 218, 224 (1st Cir. 2013) (federal jurisdiction is proper "where a state-law claim necessary raises a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state jurisdictional responsibilities." (citation and alteration omitted)); *Rhode Island Fisherman's All., Inc. v. Rhode Island Dep't of Envtl. Mgmt.*, 585 F.3d 42, 48 (1st Cir. 2009) ("To satisfy the rule, the plaintiff's well-pleaded complaint must exhibit, within its four corners, either an explicit federal cause of action or a state-law cause of action that contains an embedded question of federal law that is both substantial and disputed.").

19. As set forth below, this case meets all four requirements.[4]

20. Although Plaintiff ostensibly pleads its theories of recovery against Distributor Defendants as state law claims, it bases the underlying theory of liability on Distributor Defendants' alleged violations of federal law or alleged duties arising out of federal law, specifically the CSA, *i.e.*, that a portion of its otherwise lawful shipments of prescription opioids were unlawful because they were shipped in fulfillment of suspicious orders that Distributor Defendants allegedly had a duty to identify, report, and then not ship.

---

[4] The substantiality inquiry as it pertains to federal question jurisdiction is distinct from the merits of the case and has no bearing on the strength of Plaintiff's underlying claims. *See Gunn v. Minton*, 568 U.S. 251, 260 (2013) ("The substantiality inquiry under *Grable* looks . . . to the importance of the issue to the federal system as a whole.").

- 6 -

6345439v1(68026.1)

1    21.    The source of the asserted legal duty to monitor and report suspicious orders of

2    controlled substances is the CSA, 21 U.S.C. § 801, *et seq.*, and its implementing regulations,

3    as the Complaint itself acknowledges.[5]  *See, e.g.*, Compl., ¶ 32 ("The Distributor Defendants

4    saw the profit potential in opioid sales, participated in the conspiracy by ignoring their legal

5    responsibilities under the Controlled Substances Act . . . ."); ¶ 75 (Defendants failed "to

6    report, and take steps to halt, suspicious orders"); ¶ 165 (Defendants must be "registrant[s]"

7    under the federal Controlled Substances Act); ¶¶ 530-535 (Defendants have a duty to prevent

8    "suspicious orders" as defined by federal law, *see also* ¶ 755 (citing 21 C.F.R. § 1301.74(b));

9    ¶ 534 (acknowledging the regulation of prescription drugs by Congress).

10    22.    The source of the asserted legal duty to suspend shipments of suspicious orders

11    is 21 U.S.C. § 823(b) and (e), as interpreted by the Drug Enforcement Administration

12    ("DEA") of the United States Department of Justice.  Specifically, DEA interprets the public

13    interest factors for registering distributors under the CSA, 21 U.S.C. § 823(b) and (e), to

14    impose a responsibility on distributors to exercise due diligence to avoid filling suspicious

15    orders that might be diverted to unlawful uses.  *See Masters Pharm., Inc. v. Drug Enf't*

16    *Admin.*, 861 F.3d 206, 212-13 (D.C. Cir. 2017) (citing *In re Southwood Pharm., Inc.,*

17    *Revocation of Registration*, 72 Fed. Reg. 36,487, 36,501, 2007 WL 1886484 (Drug Enf't

18    Admin. July 3, 2007), as source of DEA's "Shipping Requirement"); *see also* Compl., ¶ 533

19    ("[i]n addition to reporting all suspicious orders, the Distributor Defendants must also stop

20    shipment on any order which is flagged as suspicious and only ship orders which were

21    flagged as potentially suspicious if, after conducting due diligence, the recipient can

22    determine that the order is not likely to be diverted into illegal channels[.]").

23    23.    Plaintiff's theories of liability against Distributor Defendants, as pled in the

24    Complaint, are thus predicated on allegations that the Distributor Defendants breached

25    alleged duties under the CSA to implement effective controls to detect and report

26    "suspicious" pharmacy orders for prescription opioids and—crucial to Plaintiff's claims—to

---

27    [5] As explained *supra*, Plaintiff attempts to avoid reference to federal law.  However, Plaintiff
28    fails to cite to any Arizona statute that imposes a duty to "report" or "halt" "suspicious
orders".

1   "halt" or refuse to ship such orders to Arizona pharmacies.  *See, e.g.*, Compl., ¶¶ 75, 532-
2   535, 755.

3       24.  Specifically, Plaintiff invokes federal law to support its claims and pleads that
4   Distributor Defendants violated federal law with, among others, the following allegations:

5       i.  "'Suspicious orders'" include orders of an unusual size, orders of
6   unusual frequency or orders deviating substantially from a normal pattern."  Compl., ¶¶ 532,
7   755 (citing 21 C.F.R. § 1301.74(b)).[6]

8       ii.  "Defendants have contributed substantially to the opioid crisis by
9   selling and distributing far greater quantities of prescription opioids than they know should
10  be necessary for legitimate medical uses, while failing to report, and take steps to halt,
11  suspicious orders when they were identified, thereby exacerbating the oversupply of such
12  drugs and fueling an illegal secondary market."  Compl., ¶ 75.

13      iii.  "In addition to reporting all suspicious orders, the Distributor
14  Defendants must also stop shipment on any order which is flagged as suspicious and only
15  ship orders which were flagged as potentially suspicious if, after conducting due diligence,
16  the recipient can determine that the order is not likely to be diverted into illegal channels[.]"
17  Compl., ¶ 533.

18      iv.  "These prescription drugs are regulated for the purpose of providing a
19  "closed" system intended to reduce the widespread diversion of these drugs out of legitimate
20  channels into the illicit market, while at the same providing a legitimate drug industry with a
21  unified approach to narcotic and dangerous drug control."  Compl., ¶ 534 (citing 1970
22  U.S.C.C.A.N. 4566, 4571-72).

23      v.  "The Distributor Defendants have publicly acknowledged that
24  wholesale distributors are a key component in the distribution chain and that they are
25  responsible for reporting suspicious orders."  Compl., ¶ 537 (citing Brief for HDMA and

---

[6] Plaintiff also cites A.A.C. R4-23-604 and A.A.C. R4-26-605 for the source of duties to report and halt suspicious orders.  As noted below, neither of these regulations contains any reference to suspicious orders of prescription drugs, or imposes any requirement to report or halt suspicious orders.

NACDS, 2016 WL 1321983, at *4 ) ("[R]egulations . . . in place for more than 40 years require distributors to report suspicious orders of controlled substances to DEA based on information readily available to them (e.g., a pharmacy's placement of unusually frequent or large orders).").

vi.     "The reason for the reporting rules is to create a 'closed' system intended to control the supply and reduce the diversion of these drugs out of legitimate channels into the illicit market, while at the same time providing the legitimate drug industry with a unified approach to narcotic and dangerous drug control. . . . Should a distributor deviate from these checks and balances, the closed system of distribution, designed to prevent diversion, collapses."  Compl., ¶ 573 (citing the Declaration of Joseph Rannazzisi, Deputy Assistant Administrator for DEA's Office of Diversion Control, filed in *Cardinal Health, Inc. v. Holder*, No. 1:12-cv-00185-RBW (D.D.C. Feb. 10, 2012), ECF No. 14-2)).

vii.     "Defendants have admitted to disregarding their duties.  They have admitted that they pumped massive quantities of opioids into communities around the country despite their obligations to control the supply, prevent, diversions, and report and take steps to halt suspicious orders."  Compl., ¶ 605.

viii.     "The Distributor Defendants failed to report "suspicious orders," which the Distributor Defendants knew were likely to be diverted, to the relevant governmental authorities."  Compl., ¶ 620.

ix.     "The Department of Justice has recently confirmed the suspicious order obligations imposed by federal law upon opioid manufacturers, fining Mallinckrodt $35 million for failure to report suspicious orders of controlled substances, including opioids, and for violating recordkeeping requirements."  Compl., ¶ 654.

x.     "The Defendants knowingly and intentionally furnished false or fraudulent information in their reports about suspicious orders, and/or omitted material information from reports, records and other documents required to be filed.  Specifically, the Defendants were aware of suspicious orders of prescription opioids and the diversion of their

1  prescription opioids into the illicit market, and failed to take responsive action. This failure

2  included the failure to report this information to the government." Compl., ¶ 763.

3        xi.    "All of the Defendants, moreover, knew that large and suspicious

4  quantities of opioids were being poured into communities throughout the United States, yet,

5  despite this knowledge, took no steps to report suspicious orders, control the supply of

6  opioids, or otherwise prevent diversion." Compl., ¶ 696.

7        xii.   "Each of the Defendants have engaged in unfair and/or deceptive trade

8  practices by omitting the material fact of its failure to design and operate a system to disclose

9  suspicious orders of controlled substances, as well as by failing to actually disclose such

10 suspicious orders . . . ." Compl., ¶ 802.[7]

11       25.    Critically, Plaintiff's theory of liability also relies on an expansive reading of

12 federal law that calls into question an agency determination. Plaintiff alleges not only that

13 Distributor Defendants should have detected and reported discrete suspicious orders by

14 individual pharmacies, but also that Distributor Defendants should have recognized that the

15 total volume of prescription opioids distributed to various regions was suspicious or

16 unreasonable. *See, e.g.*, Compl., ¶ 45 ("These Defendants' harms were compounded by

17 supplying opioids beyond what the market could bear, funneling so many opioids into

18 Arizona communities that the product could only have been diverted and used illicitly. The

19 massive quantities of opioids that flooded into Arizona as a result of Defendants' wrongful

20 conduct—431 million doses in 2016, or enough for every Arizonan to have a two-and-a-half-

21 week supply—has devastated communities across this State, especially the southern Arizona

22 community served by Tucson Medical Center.").

23       26.    To succeed on that theory, Plaintiff would thus have to show that the total

24 quantity of prescription opioids that all pharmaceutical distributors distributed was

25 unreasonable. However, the total amount of prescription opioids distributed in any given

26 year turns on annual aggregate production quotas established by DEA. Specifically, DEA

27

28 _____
[7] Again, Plaintiff cites to Arizona statutes that do not impose any duty to disclose suspicious orders, which is defined by federal law.

1   must "determine the total quantity of each basic class of controlled substance listed in

2   Schedule I or II necessary to be manufactured during the following calendar year to provide

3   for the estimated medical, scientific, research and industrial needs of the United States, for

4   lawful export requirements, and for the establishment and maintenance of reserve stocks."

5   21 C.F.R. § 1303.11(a).  In making this determination, DEA must consider "[p]rojected

6   demand" for such substances.  21 C.F.R. § 1303.11(b).  Thus, to show that the total quantity

7   of prescription opioids that Distributor Defendants distributed was unreasonable, Plaintiff

8   would have to show that the annual aggregate production quotas set by DEA, pursuant to

9   federal statute, were themselves unreasonable.[8]

10        27.    The federal questions presented by Plaintiff's claims therefore are "(1)

11   necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in

12   federal court without disrupting the federal-state balance approved by Congress."  *Gunn*, 568

13   U.S. at 258.

14        28.    ***First***, Plaintiff's state law claims "allege[] that [Defendants] violated a duty

15   supplied by federal law" and thus "necessarily raise[s] a stated federal issue."  *Commc'ns*

16   *Mgmt. Servs., LLC v. Qwest Corp.*, 726 F. App'x 538, 540 (9th Cir. 2018); *see also Rhode*

17   *Island Fishermen's All.*, 585 F.3d at 49 (federal issue necessarily raised where "the[] asserted

18   right to relief under state law requires resolution of a federal question"); *PNC Bank, N.A. v.*

19   *PPL Elec. Util. Corp.*, 189 F. App'x 101, 104 n.3 (3d Cir. 2006) (federal question

20   necessarily raised where "the right to relief depends upon the construction or application of

21   federal law") (citation omitted); *N. Carolina by & through N .Carolina Dep't of Admin. v.*

22   *Alcoa Power Generating, Inc.*, 853 F.3d 140, 146 (4th Cir. 2017) ("regardless of the

23   allegations of a state law claim, 'where the vindication of a right under state law necessarily

24   turns on some construction of federal law,' the claim arises under federal law and thus

---

25   [8] Moreover, 21 U.S.C. § 827(d)(1) requires Distributor Defendants to report to DEA "every
26   sale, delivery or other disposal" by them of prescription opioids.  In other words, it has been
     the case for years that each Distributor Defendant already has reported to DEA the total
27   volume of prescription opioids it distributed.  To succeed on its theory of liability that
     Distributor Defendants should have recognized and reported that the total volume of
     prescription opioids was unreasonable, Plaintiff would have to show that Distributor
28   Defendants' existing reporting to DEA was inadequate as a matter of federal regulation.

supports federal question jurisdiction under 28 U.S.C. § 1331.") (alteration omitted); *Virgin Islands Hous. Auth. v. Coastal Gen. Constr. Servs. Corp.*, 27 F.3d 911, 916 (3d Cir. 1994) ("[A]n action under 28 U.S.C. 1331(a) arises only if the complaint seeks a remedy expressly granted by federal law *or if the action requires construction of a federal statute*, or at least a distinctive policy of a federal statute requires the application of federal legal principles.") (emphasis added).

29.     As pled, Plaintiff's claims against the Distributor Defendants require Plaintiff to establish that Distributor Defendants breached duties under federal law by failing to stop shipments of otherwise lawful orders of controlled substances into Arizona.  For example, in pleading nuisance, Plaintiff alleges that Defendants failed "to implement effective controls and procedures in their supply chains to guard against theft, diversion and misuse of controlled substances, and their failure to adequately design and operate a system to detect, halt, and report suspicious orders of controlled substances."  Compl., ¶ 870.

30.     Critically, however, Plaintiff does not and cannot identify a state law source for the duty "to detect, halt, and report suspicious orders[,]" the sole source of which is the federal CSA.  None of the Arizona laws or regulations that Plaintiff cites establishes an independent state law duty to refuse to fill suspicious orders or prescription drugs.  Further, Arizona's CSA requires distributors to be "registrants" under the federal CSA, but it imposes no independent duties with respect to suspicious orders.  Similarly, A.A.C. R4-23-604 applies solely to drug manufacturers, while A.A.C. R4-26-605 requires only that distributors comply with federal law in the record-keeping, quality control, and quarantine of drugs. *Neither of these regulations imposes any duty independent of federal law with respect to halting or refusing to ship suspicious orders*.

31.     The Complaint raises a claim that necessarily requires the Court to interpret, construe, and apply federal law.  *See Merrell Dow*, 478 U.S. at 808-09.  "Thus, it is not logically possible for the plaintiffs to prevail . . . without affirmatively answering the embedded question of whether federal law" required Distributor Defendants to report and halt shipments of suspicious orders for prescription opioids under the circumstances.  *Rhode*

1    *Island Fishermen's All.*, 585 F.3d at 49.  "That is enough to make out a federal question."

2    *Id.*

3           32.    While plaintiffs are masters of their complaints, and they "may avoid federal

4    jurisdiction by **exclusive** reliance on state law," *Caterpillar, Inc. v. Williams*, 482 U.S. 386,

5    392 (1987) (emphasis added), Plaintiff here alleges violations of federal law as the basis for

6    its state-law claims.[9]  Tellingly, even in this second iteration of its Complaint in an attempt to

7    remove all reference to federal law, Plaintiff cannot avoid reliance on and reference to

8    federal law as the basis for its claims and to establish a duty to report suspicious orders.  *See*,

9    *e.g.*, Section IV, Paragraph 24 (i-xii).

10          33.    In sum, the Complaint necessarily raises a federal issue—namely, whether

11   Distributor Defendants violated the CSA.

12          34.    As noted, the Complaint also raises a federal issue because it implicates the

13   actions of a federal agency.  *See Empire Healthcare Assur., Inc. v. McVeigh*, 547 U.S. 677,

14   700 (2006) ("the dispute [in *Grable*] centered on the action of a federal agency (IRS) and its

15   compatibility with a federal statute, the question qualified as 'substantial,' and its resolution

16   was both dispositive of the case and would be controlling in numerous other cases.").

17   Specifically, while Plaintiff alleges that the total volume of prescription opioids distributed

18   by Distributor Defendants was unreasonable or suspicious, that figure turns on production

19   quotas set by DEA.  Plaintiff does not and cannot cite to any other source.  Plaintiff's theory

20   of liability thus calls into question the validity of DEA's determinations under federal law.

21   _____

22   [9] Furthermore, it is not necessary for federal jurisdiction that AmerisourceBergen establish that all of Plaintiff's counts against it raise a federal question.  Even if Plaintiff could prove

23   one or more of those counts without establishing a violation of federal law, this Court still has federal-question jurisdiction: "Nothing in the jurisdictional statutes suggests that the

24   presence of related state law claims somehow alters the fact that [the] complaints, by virtue of their federal claims, were 'civil actions' within the federal courts' 'original jurisdiction.'"

25   *City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 166 (1997).

26   Because the Court has original jurisdiction over at least one count here, it has supplemental jurisdiction over Plaintiff's remaining counts against Distributor Defendants, which are so

27   related that they "form part of the same case or controversy."  28 U.S.C. § 1367(a); *see also Rhode Island Fishermen's All.*, 585 F.3d at 48 ("[I]f the district court had original

28   jurisdiction over any one of those causes of action, then it had supplemental jurisdiction over the rest.").

- 13 -

See Bd. Of Comm'rs of the Se. Louisiana Flood Prot. Auth.-E. v. Tennessee Gas Pipeline Co., 29 F. Supp. 3d 808, 862 (E.D. La. 2014) ("While Plaintiff may not be expressly challenging a specific action of a federal agency, the breadth of Plaintiff's claims amounts to a collateral attack on an entire regulatory scheme."); McKay v. City & Cty. Of San Francisco, 2016 WL 7425927, at *4 (N.D. Cal. Dec. 23, 2016) (concluding that complaint necessarily raises federal issue where "plaintiffs' claims are 'inescapably intertwined' with a collateral attack on an [agency] order").

35.    **Second**, this federal issue is "actually disputed because the parties disagree as to the scope of alleged duties arising under the CSA and whether Distributor Defendants violated their duties that, as Plaintiff pleads them, arise only under the CSA.  Despite Plaintiff's attempt to plead otherwise, this federal issue is the "central point of dispute"—as evidenced by the lack of such duties in the Arizona law Plaintiff relies on.  Gunn, 568 U.S. at 259.

36.    **Third**, the federal issue presented by Plaintiff's claims is "substantial."  "The substantiality inquiry under Grable looks . . . to the importance of the issue to the federal system as a whole."  Gunn, 568 U.S. at 260.  Among other things, the Court must assess whether the federal government has a "strong interest" in the federal issue at stake and whether allowing state courts to resolve the issue will "undermine the development of a uniform body of [federal] law."  Id. at 260-62 (citation omitted); Municipality of Mayaguez v. Corporation Para el Desarrollo del Oeste, Inc., 726 F.3d 8, 14 (1st Cir. 2013) ("[A] federal issue may also be substantial where the resolution of the issue has 'broader significance . . . for the Federal Government.'") (quoting Gunn, 568 U.S. at 260).  As the Supreme Court explained in Grable, "[t]he doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues."  545 U.S. at 312.

37.    Plaintiff's theories of Distributor Defendants' liability necessarily require that a court determine the scope of Distributor Defendants' obligations under federal law because

1  regulation of controlled substances is first and foremost a federal regulation.  Compl., ¶ 534

2  ("These prescription drugs are regulated for the purpose of providing a 'closed' system

3  intended to reduce the widespread diversion of these drugs out of legitimate channels into the

4  illicit market, while at the same providing a legitimate drug industry with a unified approach

5  to narcotic and dangerous drug control.") (citing 1970 U.S.C.C.A.N. 4566, 4571-72).

6  Indeed, as Plaintiff itself acknowledges, Congress designed the CSA with the intent of

7  reducing illegal diversion of controlled substances, "while at the same time providing the

8  legitimate drug industry with a *unified approach* to narcotic and dangerous drug control."

9  H.R. Rep. No. 1444, 91st Cong. (2nd Sess. 1970), *as reprinted in* 1970 U.S.C.C.A.N. 4566,

10  4571-72.  *See also* Compl., ¶ 573.

11        38.    Plaintiff's theories of Distributor Defendants' liability thus "involve aspects of

12  the complex federal regulatory scheme applicable to" the national prescription drug supply

13  chain, *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 195 (2d Cir. 2005), and are

14  "sufficiently significant to the development of a uniform body of [controlled substances]

15  regulation to satisfy the requirement of importance to the federal system as a whole,

16  *NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d 1010, 1024 (2d Cir. 2014).

17        39.    Plaintiff's attempt to enforce the CSA—however indirect—raises a substantial

18  federal question even though the CSA does not provide for a private right of action.  In 2005,

19  in *Grable*, the Supreme Court held that lack of a federal cause of action does *not* foreclose

20  federal-question jurisdiction.  The Court stated that applying *Merrell Dow* too narrowly

21  would both "overturn[] decades of precedent," and "convert[] a federal cause of action from

22  a sufficient condition for federal-question jurisdiction into a necessary one."  *Grable*, 545

23  U.S. at 317; *see also, e.g.*, *Rank v. Mt. Hood Cable Reg. Comm'n*, 2017 WL 1752954, at *4-

24  5 (D. Or. May 2, 2017) (state law claims based on violations of Cable Communications

25  Policy Act raise substantial federal questions and satisfy *Grable* even though no private right

26  of action exists under the Act).

27        40.    The CSA itself notes that "illegal importation, manufacture, distribution, and

28  possession and improper use of controlled substances have a substantial and detrimental

- 15 -

effect on the health and general welfare of the American people" and that "[f]ederal control of the intrastate incidents of the traffic in controlled substances is essential to the effective control of the interstate incidents of such traffic." 21 U.S.C. § 801. Furthermore, "minimizing uncertainty over" reporting obligations under the CSA "fully justifies resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *New York ex rel. Jacobson v. Wells Fargo Nat'l Bank, N.A.*, 824 F.3d 308, 317-18 (2d Cir. 2016); *see also PNC Bank, N.A.*, 189 F. App'x at 104 n.3 (state law claim "raises a substantial federal question—the interpretation of" a federal statute "over which the District Court properly exercised removal jurisdiction"); *Rhode Island Fishermen's All.*, 585 F.3d at 51 ("[T]here is substantial federal interest in ensuring that actions taken in pursuance of [federal regulatory programs] receive the uniformity of interpretation that a federal forum offers."). Thus, "[g]iven that . . . the plaintiffs' claims turn on the interpretation of the federal regulations governing" the distribution of controlled substances "and the importance of those regulations to the Congressional scheme, this case plainly falls within the narrow swath of cases described in *Grable*." *Anversa v. Partners Healthcare Sys., Inc.*, 825 F.3d 167, 174 (1st Cir. 2016).

41.     Removal is particularly appropriate here because Plaintiff's action is but one of more than 1,150 similar actions nationwide, most of which are pending in the MDL in the Northern District of Ohio. *See MDS (Canada) Inc. v. Rad Source Techs., Inc.*, 720 F.3d 822, 842 (11th Cir. 2013) ("[A] question that will control many other cases is more likely to be a substantial federal question."). The MDL judge, Judge Polster, is attempting to achieve a national solution to this nationwide problem.[10]

42.     ***Fourth***, and finally, the federal issue is also capable of resolution in federal court "without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258. Federal courts exclusively hear challenges to DEA authority to enforce the CSA

---

[10] Less than two months after the MDL was created, Judge Polster convened the first day-long settlement conference on January 31, 2018. Judge Polster required attendance by party representatives and their insurers and invited attendance by Attorneys General and representatives of the DEA and FDA.

against distributors, and litigating this case in a state court runs the risk of the state court applying federal requirements inconsistently with the manner in which the federal agency is tasked with enforcing the CSA—the DEA—applies them.  Federal jurisdiction is therefore "consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of 1331."  *PNC Bank, N.A.*, 189 F. App'x at 104 n.2.

43.    In summary, removal of this action is appropriate because Plaintiff's "state-law claim[s] necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities."  *Grable*, 545 U.S. at 314; *see also, e.g.*, *PNC Bank, N.A.*, 189 F. App'x at 104 n.3 (state law claim based on violation of Internal Revenue Code "gives rise to federal-question jurisdiction" under *Grable*); *New York ex rel. Jacobson*, 824 F.3d at 315-18 (state law claims based on defendant's alleged violation of Internal Revenue Code satisfy *Grable*); *NASDAQ OMX Grp., Inc.*, 770 F.3d at 1031 (state law claims premised on violations of Exchange Act "necessarily raise disputed issues of federal law of significant interest to the federal system as a whole"); *Gilmore v. Weatherford*, 694 F.3d 1160, 1176 (10th Cir. 2012) ("Although plaintiffs could lose their conversion claim without the court reaching the federal question, it seems that they cannot win unless the court answers that question.  Thus, plaintiffs' 'right to relief necessary depends on resolution of a substantial question of federal law.'") (citation omitted); *Broder*, 418 F.3d at 196 (state law claims premised on cable provider's alleged violations of Communication Act's uniform rate requirement satisfy "*Grable* test for federal-question removal jurisdiction"); *Ranck*, 2017 WL 1752954, at *5 (state law claims based on violations of Cable Communications Policy Act satisfy *Grable*).

44.    To the extent that the Court determines that some, but not all, of Plaintiff's claims state a substantial federal question, the Court can evaluate whether to retain the non-federal claims against Distributor Defendants and Marketing Defendants under the doctrine of supplemental jurisdiction, 28 U.S.C. § 1367(a).

**V.      Procedural Requirements**

45.     This Notice of Removal has been timely filed within 30 days of the date of service, in accordance with 28 U.S.C. § 1446(b).

46.     In accordance with Local Rule 3.6(a), the most recent version of the docket from the State Court Action is attached as **Exhibit 3**.

47.     In accordance with 28 U.S.C. § 1446(d) and Local Rule 3.6(a), a copy of this Notice of Removal has been filed with the Clerk of the Court for Pima County Superior Court of the State of Arizona and notice has been sent to Plaintiff's counsel.

48.     In accordance with 28 U.S.C. § 1446(a) and Local Rule 3.6(b), true and correct copies of all pleadings and other documents that were previously filed in the State Court Action, as well as a verification that they are true and correct copies, are being filed with this Notice of Removal.  The verification is attached as **Exhibit 4**.  The State Court Action record is attached as **Exhibit 5**.

49.     Pursuant to 28 U.S.C. § 1446(b)(1)(A), all defendants that have been properly joined and served consent to removal of this action.

50.     The following Defendants have been served with the Complaint and consent to removal as indicated by their counsel's signatures below: **PURDUE PHARMA L.P.; PURDUE PHARMA, INC.; THE PURDUE FREDERICK COMPANY INC.; DEPOMED, INC. n/k/a ASSERTIO THERAPEUTICS, INC.; MALLINCKRODT, LLC; SPECGX LLC; INSYS THERAPEUTICS, INC.; NORAMCO, INC; ANDA, INC.; H.D. SMITH, LLC F/K/A H.D. SMITH WHOLESALE DRUG CO.; HENRY SCHEIN, INC.;  JOHNSON & JOHNSON; JANSSEN PHARMACEUTICALS, INC.; ORTHO-MCNEIL-JANSSEN PHARMACEUTICALS, INC. n/k/a JANSSEN PHARMACEUTICALS, INC.; JANSSEN PHARMACEUTICA, INC. n/k/a JANSSEN PHARMACEUTICALS, INC.; TEVA PHARMACEUTICALS USA, INC; CEPHALON, INC.; ACTAVIS PHARMA, INC. F/K/A WATSON PHARMA, INC.; WATSON LABORATORIES, INC.; ACTAVIS LLC.; ABBOTT LABORATORIES; ABBOTT LABORATORIES INC.; CARDINAL HEALTH, INC.; ENDO HEALTH**

SOLUTIONS INC.; ENDO PHARMACEUTICALS INC.; and AMNEAL PHARMACEUTICALS, LLC.[11]

51.     Although the following Defendants have not been served, and thus their consent to removal is not required, the Defendants nonetheless consent to removal: MALLINCKRODT PLC[12]; ALLERGAN PLC F/K/A ACTAVIS PLC; ALLERGAN FINANCE, LLC F/K/A ACTAVIS, INC. F/K/A WATSON PHARMACEUTICALS, INC.[13]

52.     By filing this Notice of Removal, AmerisourceBergen and the consenting Defendants expressly reserve, and do not waive, any and all defenses that may be available to them, including those related to personal jurisdiction and service of process.

53.     If any question arises as to the propriety of removal to this Court, AmerisourceBergen requests the opportunity to present a brief and oral argument in support of its position that this case has been properly removed.

54.     AmerisourceBergen reserves the right to amend to supplement this Notice.

---

[11] Improperly identified by Plaintiff and improperly served as "Amneal Pharmaceuticals, LLC n/k/a Amneal Pharmaceuticals, Inc."

[12] Mallinckrodt plc, an Irish public limited company, disputes that it has been served, but consents to this Notice out of an abundance of caution and expressly reserves all defenses, including those related to personal jurisdiction and service of process.

[13] The state court docket indicates a purported proof of service for Allergan plc f/k/a Actavis plc and Allergan Finance, LLC f/k/a Actavis, Inc. f/k/a Watson Pharmaceuticals, Inc. that was served at 425 Privet Road, Horsham, Pennsylvania 19044.  However, that address appears to belong to a Teva entity.  Moreover, Allergan plc is an Irish corporation that does not have any registered agents in the United States.  Both Allergan plc and Allergan Finance, LLC contest the validity of this purported service.

- 19 -

1    **WHEREFORE**, AmerisourceBergen removes this action, pending in the Superior

2  Court of the State of Arizona in and for the County of Pima, Case No. C20184991, to this

3  Court.

4    DATED this 29th day of October, 2018

5                                        JENNINGS STROUSS & SALMON, P.L.C.

6

7

8                                        By: _s/ John J. Kastner, Jr._
                                            John J. Kastner, Jr.
9                                           Jay A. Fradkin
                                            *Attorneys for Defendant AmerisourceBergen*
10                                          *Drug Corporation*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

6345439v1(68026.1)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>CONSENTS TO REMOVAL</u>

*s/ Laura Sixkiller*
Laura Sixkiller
DLA Piper LLP (US)
2525 East Camelback Road
Esplanade II, Suite 1000
Phoenix, Arizona 85016-4245
Tel: (480) 606-5161
Fax: (480) 323-2419
laura.sixkiller@dlapiper.com

Mark S. Cheffo*
Hayden A. Coleman*
DECHERT LLP
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036-6797
Tel: (212) 698-3500
Fax: (212) 698-3599
Mark.Cheffo@dechert.com
Hayden.Coleman@dechert.com

Jae Hong Lee*
DECHERT LLP
One Bush Street, Suite 1600
San Francisco, CA 94104-4446
Tel: (415) 262-4500
Fax: (415) 262-4555
Jae.Lee@dechert.com

*\* denotes national counsel who will seek
pro hac vice admission*

*Counsel for Purdue Pharma L.P., Purdue
Pharma Inc., and The Purdue Frederick
Company, Inc.*

6345439v1(68026.1)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*s/ Jeremy C. Johnson*
Jeremy C. Johnson (#025203)
David C. Potts (#030550)
**JONES, SKELTON & HOCHULI, P.L.C.**
40 North Central Avenue, Suite 2700
Phoenix, Arizona 85004
Phone: (602) 263-4453
Fax: (602) 200-7868
Email:  jjohnson@JSHFIRM.com
        dpotts@JSHFIRM.com

*Counsel for Amneal Pharmaceuticals, LLC*

6345439v1(68026.1)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*s/ Christina M. Vitale*
Christina M. Vitale
MORGAN, LEWIS & BOCKIUS LLP
1000 Louisiana St #4000
Houston, TX 77002
(713) 890-5764
christina.vitale@morganlewis.com

Steven A. Reed*
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
(215) 963-5000
steven.reed@morganlewis.com

James Collie IV*
MORGAN, LEWIS & BOCKIUS LLP
600 Anton Blvd
Costa Mesa, CA 92626
(949) 399-7199
collie.james@morganlewis.com

*\* denotes national counsel who will seek
pro hac vice admission*

*Attorneys for Teva Pharmaceuticals USA,
Inc.; Cephalon, Inc.; Watson Laboratories,
Inc.; Actavis LLC; and Actavis Pharma,
Inc. f/k/a Watson Pharma, Inc.*

- 23 -

1
2
3
4
5

*s/ Charles C. Lifland*
Charles C. Lifland*
O'MELVENY & MYERS LLP
400 S. Hope Street
Los Angeles, CA 90071
Telephone: (213) 430-6000
clifland@omm.com

6
7

*\* denotes national counsel who will seek*
*pro hac vice admission*

8
9
10
11

*Counsel for Johnson & Johnson; Janssen*
*Pharmaceuticals, Inc.; Janssen*
*Pharmaceutica, Inc. n/k/a Janssen*
*Pharmaceuticals, Inc.; Ortho-McNeil-*
*Janssen Pharmaceuticals, Inc. n/k/a*
*Janssen Pharmaceuticals, Inc.*

12

13
14
15
16
17
18

*s/ Daniel G. Jarcho*
Daniel G. Jarcho*
ALSTON & BIRD LLP
950 F Street NW
Washington, DC 20004
Telephone: (202) 239-3254
Facsimile: (202) 239-333
daniel.jarcho@alston.com

19
20
21
22
23
24

Cari K. Dawson*
Jenny A. Mendelsohn*
ALSTON & BIRD LLP
1201 West Peachtree Street NW
Atlanta, GA 30309
Tel.: (404) 881-7000
Fax: (404) 881-7777
cari.dawson@alston.com
jenny.mendelsohn@alston.com

25
26

*\*denotes national counsel who will seek*
*pro hac vice admission*

27

*Attorneys for Noramco, Inc.*

28

- 24 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*s/ John A. McCauley*
John A. McCauley*
James K. O'Connor*
VENABLE LLP
750 E. Pratt Street
Suite 900
Baltimore, MD 21202
T:  (410) 244-7655
F:  (410) 244-7742
JAMcCauley@Venable.com
JKO'Connor@Venable.com

*\* denotes national counsel who will seek
pro hac vice admission*

*Attorneys for Abbott Laboratories and
Abbott Laboratories Inc.*


*s/ David T. Arlington*
Kevin M. Sadler*
Baker Botts LLP
1001 Page Mill Road
Building One, Suite 200
Palo Alto, CA 94304-1007
Tel: 650.739.7500
Fax: 650.739.7699
kevin.sadler@bakerbotts.com

David T. Arlington*
Baker Botts LLP
98 San Jacinto Blvd., Suite 1500
Austin, Texas 78701-4039
Tel: 512.322.2678
Fax: 512.322.8392
david.arlington@bakerbotts.com

*\* denotes national counsel who will seek
pro hac vice admission*

*Counsel for Depomed, Inc., n/k/a Assertio
Therapeutics, Inc.*

- 25 -

6345439v1(68026.1)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*s/ John D. Lombardo*
John D. Lombardo*
ARNOLD & PORTER KAYE SCHOLER
LLP
777 S. Figueroa Street
44th Floor
Los Angeles, CA 90017
(213) 243-4000
John.Lombardo@arnoldporter.com

*\* denotes national counsel who will seek
pro hac vice admission*

*Counsel for Endo Health Solutions Inc.,
and Endo Pharmaceuticals Inc.*

*s/ J. Matthew Donohue*
J. Matthew Donohue*
Joseph L. Franco*
HOLLAND & KNIGHT LLP
2300 U.S. Bancorp Tower
111 S.W. Fifth Avenue
Portland, OR 97204
Telephone: (503) 243-2300
Facsimile: (503) 241-8014
matt.donohue@hklaw.com
joe.franco@hklaw.com

*\* denotes national counsel who will seek
pro hac vice admission*

*Counsel for Insys Therapeutics, Inc.*

- 26 -

*s/ Rocky C. Tsai*
Rocky C. Tsai*
ROPES & GRAY LLP
Three Embarcadero Center
San Francisco, CA 94111-4006
Telephone: (415) 315-6300
Rocky.Tsai@ropesgray.com

*\* denotes national counsel who will seek
pro hac vice admission*

*Counsel for Mallinckrodt plc, Mallinckrodt
LLC, and SpecGx LLC*


*s/ Eric Witt*
Eric Witt (ABN 030235)
Baker & Hostetler LLP
11601 Wilshire Boulevard | Suite 1400
Los Angeles, CA 90025-0509
Telephone: (310) 979-8456
ewitt@bakerlaw.com

Enu Mainigi*
F. Lane Heard III*
Steven M. Pyser*
Ashley W. Hardin*
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, NW
Washington, DC 20005
Tel: (202) 434-5000
Fax: (202) 434-5029
emainigi@wc.com
lheard@wc.com
spyser@wc.com
ahardin@wc.com

*Counsel for Cardinal Health, Inc.*

*\*denotes national counsel who will seek
pro hac vice admission*

- 27 -

1
2
3
4
5
6
7
8

*s/ James W. Matthews*
James W. Matthews*
Katy E. Koski*
Redi Kasollja*
FOLEY & LARDNER LLP
111 Huntington Avenue
Boston, MA 02199
Telephone: 617.342.4000
Facsimile: 617.342.4001
jmatthews@foley.com
kkoski@foley.com
rkasollja@foley.com

9
10

*\* denotes national counsel who will seek
pro hac vice admission*

11

*Counsel for Anda, Inc.*

12

13
14
15
16
17
18
19

*s/ Kathleen L. Matsoukas*
Kathleen L. Matsoukas*
Oni N. Harton*
BARNES & THORNBURG LLP
11 South Meridian Street
Indianapolis, Indiana 46204-3535
Tel: (317) 231-7332
Fax: (317) 231-7433
kathleen.matsoukas@btlaw.com
oni.harton@btlaw.com

20
21

*\* denotes national counsel who will seek
pro hac vice admission*

22
23

*Counsel for H.D. Smith, LLC f/k/a/ H.D.
Smith Wholesale Drug Co.*

24
25
26
27
28

- 28 -

6345439v1(68026.1)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*s/ Adam Weisman*
Adam Weisman, Esq. ASP 22086, PCC 65638
HINDERAKER RAUH & WEISMAN, P.L.C.
2401 East Speedway Boulevard
Tucson, Arizona 85719
Tel: (520) 881-6607
Fax: (520) 881-6775
adam@hrtucson.com

John P. McDonald*
jmcdonald@lockelord.com
C. Scott Jones*
sjones@lockelord.com
Brandan J. Montminy*
brandan.montminy@lockelord.com
LOCKE LORD LLP
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201
Telephone: (214) 740-8000
Facsimile: (214) 740-8800

*\* denotes national counsel who will seek pro hac vice admission*

*Counsel for Henry Schein, Inc.*

## CERTIFICATE OF FILING

I hereby certify that on October 29, 2018, I electronically transmitted the attached document to the Clerk's office using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to the following registrants:

Steven C. Mitchell
Samuel F. Mitchell
MITCHELL & SPEIGHTS, LLC
4854 E. Baseline Road, Suite 103
Mesa, AZ  85206
steve@mitchellspeights.com
sam@mitchellspeights.com

6345439v1(68026.1)

Copy e-mailed/mailed to registrants not CM/ECF users:

Linda Singer
MOTLEY RICE LLC
401 9th Street NW
Suite 1001
Washington, DC  20004
(202) 386-9626
lsinger@motleyrice.com

John W. ("Don") Barrett
PO Box 927
404 Court Square North
Lexington, MS  39095
(662) 834-2488
dbarrett@barrettlawgroup.com

G. Robert Blakey
WILLIAM J. AND DOROTHY T. O'NEILL
PROFESSOR OF LAW EMERITUS
NOTRE DAME LAW SCHOOL
7002 East San Miguel Avenue
Paradise Valley, AZ  85253
(574) 514-8220
Blakey.1@nd.edu

*Attorneys for Plaintiff*

By: *s/Sonia M. Leon, Legal Assistant*