John J. Kastner, Jr. - State Bar No. 021529
jkastner@jsslaw.com
Jay A. Fradkin – State Bar No. 006864
jfradkin@jsslaw.com
JENNINGS, STROUSS & SALMON, P.L.C.
A Professional Limited Liability Company
1760 E. River Road, Suite 230
Tucson, AZ 85718-5990
(520) 618-1051
Fax: (520) 618-1071

MinuteEntries@jsslaw.com

Steven J. Boranian (*pro hac vice*)
sboranian@reedsmith.com
REED SMITH LLP
101 Second Street, Suite 1800
San Francisco, CA 94105
Telephone: (415) 543-8700
Fax: (415) 391-8269

*Attorneys for Defendant*
*AmerisourceBergen Drug Corporation*

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Tucson Medical Center, a corporation,<br><br>Plaintiff,<br><br>vs.<br><br>Purdue Pharma L.P.,<br><br>Defendants. | No. 4:18-cv-00532-RCC<br><br>**OPPOSITION TO PLAINTIFF'S EMERGENCY MOTION TO REMAND AND FOR SANCTIONS** |

### I.     Introduction

The only one here engaged in gamesmanship is the party who complained to this Court about the urgency of its situation more than a month ago, only to abruptly dismiss its case and start all over again in a different forum four days after this Court issued a ruling that the party did not like.  That party is Plaintiff Tucson Medical Center, whose remand motion is heavy on strident accusations, but is noticeably missing any substantive discussion of this Court's subject matter jurisdiction.  Plaintiff also fails to disclose to this Court that at least

nine district judges presented with these issues in the last eight months have <u>not</u> granted remand, but have either granted stays pending transfer to the Opiate MDL or have deferred ruling on remand motions until transfer was complete.

That is what this Court did the last time around, and the Court should do the same again. As this Court will recall, Plaintiff filed its first opioid-related civil action on August 22, 2018, and after AmerisourceBergen Drug Corporation and McKesson Corporation removed the case on federal question and federal officer jurisdiction, this Court issued a partial stay on October 5, 2018. The case would proceed in this Court—including answering the complaint and filing motions to dismiss—but the Court deferred the jurisdictional issues to the Opiate MDL, where Judge Polster can decide subject matter jurisdiction consistently across the numerous cases raising the same or similar issues.

Unhappy with that result, Plaintiff voluntarily dismissed the complaint and restarted its case in Pima County. The newly filed Complaint, however, still alleges that AmerisourceBergen Drug Corporation and other Distributor Defendants breached duties defined by the federal Controlled Substances Act and related regulations. Plaintiff attempted to scrub references to federal law from its new complaint, and it dropped the party asserting federal officer jurisdiction, McKesson Corporation. But the claims that Plaintiff alleges, and the facts and law upon which the claims are based, still necessarily raise substantial federal issues. AmerisourceBergen Drug Corporation therefore removed the case again.

This is essentially the same lawsuit as before, yet Plaintiff's motion does not offer any substantive discussion of federal question jurisdiction. Instead, Plaintiff asserts incorrectly that AmerisourceBergen Drug Corporation filed a notice of removal that is the same "word for word" as others. To the contrary, AmerisourceBergen filed a removal notice specific to this action, and it cites specific allegations from the newly filed Complaint in support of this Court's jurisdiction. Plaintiff also asserts falsely that courts have "unanimously rejected" federal question jurisdiction in these cases. The truth is that multiple federal courts have deferred ruling on remand motions challenging federal question jurisdiction or have outright

6365999v1(68026.1)

stayed the cases in deference to the Opiate MDL.[1]  The trend is clear, and it makes perfect sense:  As the number of cases presenting the same or similar jurisdictional issues increases, it becomes all the more compelling to defer the common issues to Judge Polster for consistent determination in the MDL.  Judge Polster has not yet addressed federal question jurisdiction over Distributor Defendants.

If this Court reaches the merits of jurisdiction, it will see that federal jurisdiction is proper under the Supreme Court's four-part test from *Grable & Sons Metal Products, Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005), and *Gunn v. Minton*, 568 U.S. 251, 258 (2013). All four factors are present here.  *First*, Plaintiff's complaint **necessarily raises federal issues** by premising its claims on obligations that allegedly arise under the federal CSA, including alleged failures to sufficiently report and halt "suspicious orders" for prescription opioids.  *Second*, the parties **actually dispute** the federal issues because they contest whether Distributors violated the CSA.  *Third*, the **federal issues are substantial** given the federal interest in the CSA's nationwide regulatory scheme, which requires uniformity, and the federal government's asserted interest in the subject matter of this litigation.  And *fourth*, federal jurisdiction **will not upset any federal-state balance**.

For these reasons, this Court should deny Plaintiff's remand motion or defer the

---

[1] See, e.g., *Delaware Cty. v. Purdue Pharma L.P. et al.*, No. 18-cv-0460-CVE-JFJ (N.D. Ok. Oct. 26, 2018) (finding that the issues presented were not straightforward and, therefore, if it "were to decide the motion for remand, the possibility of inconsistent rulings on identical jurisdictional issues would be great."); *City of Paterson v. Purdue Pharma L.P.*, No. 2:17-cv-13433 (D.N.J.) (transferred to MDL despite pending remand motion); *N. Mississippi Med. Ctr., Inc. v. McKesson Corp.*, No. 1:18-cv-0078 (N.D. Miss.) (same); *Cty. of Hudson v. Purdue Pharma L.P.*, No. 2:18-cv-9029 (D.N.J.) (same); *County of San Mateo v. McKesson Corp.*, 3:18-cv-04535 (N.D. Cal. Aug. 28, 2018), ECF No. 22 (staying case because plaintiff's "argument that the Court should consider the jurisdictional questions raised in its motion to remand prior to issuing a stay is unconvincing. When motions to stay and to remand are pending, 'deference to the MDL court for resolution of a motion to remand often provides 'the opportunity for the uniformity, consistency, and predictability in litigation that underlies the MDL system.''") (citing *Couture v. Hoffman-La Roche, Inc.*, 2012 WL 3042994 (N.D. Cal. July 25, 2012)); *City of Jacksonville v. Purdue Pharma L.P.*, No. 3:18-cv-751-J-32PDB (M.D. Fla., Aug. 22, 2018); *Vill. of Melrose Park v. Purdue Pharma L.P.*, No. 1:18-cv-05288 (N.D. Ill. Aug. 10, 2018) (court deferred ruling on remand motion until decision by JPML regarding transfer to MDL); *Intergovernmental Risk Management Agency et al. v. Purdue Pharma L.P. et al.*, No. 1:17-cv-06959 (N.D. Ill., Oct. 29, 2018) (stayed); *City of Harvey v. Purdue Pharma L.P.*, No. 1:18-cv-05756 (N.D. Ill., Sept. 19, 2018) (court deferred ruling on motion for remand and extended deadlines pending transfer to the MDL).

6365999v1(68026.1)

motion to the Opiate MDL.

## II.    Background

### A.    Plaintiff's First Action Alleged That Distributor Defendants Violated Obligations Defined Under Federal Law

Plaintiff Tucson Medical Center filed its first opioid-related lawsuit in Pima County on August 22, 2018, and the complaint alleged claims generally against two groups of defendants.  Case No. 4:18-cv-00481, Doc. 1-3.  Plaintiff alleged first that the "Marketing Defendants" engaged in a variety of conduct that allegedly resulted in damages to Plaintiff through the use and abuse of opioids.  *Id.* at ¶ 78-80.  Plaintiff's allegations against the "Distributor Defendants were more particular.  According to the complaint, the Distributor Defendants did not sufficiently monitor for, detect, report, and suspend the shipment of "suspicious orders" of prescription opioid medications.  *Id.* at ¶ 400.  These allegations necessarily raised substantial federal questions, as "suspicious order" is a regulatory term of art defined by the federal Controlled Substances Act and related regulations, and the complaint squarely alleged breaches of obligations defined by federal law. AmerisourceBergen Drug Corporation therefore removed the case to this Court on the basis of federal question jurisdiction, and McKesson Corporation separately removed on federal officer jurisdiction.  *Id.*, Docs. 1, 13.

After the cases were consolidated before this Court, the parties filed multiple motions, including (1) a motion to remand the case to state court and (2) a motion to stay all proceedings pending a decision from the Judicial Panel on Multidistrict Litigation ("JPML") on the transfer of the case to MDL No. 2804, *In re National Prescription Opiate Litigation*, MDL No. 2804, where more than 1,300 cases against the same defendants are currently pending in the Northern District of Ohio.[2]   After hearing argument, this Court granted a partial stay:

In light of these circumstances, the Court finds it appropriate to order a

---

[2] *See In re Nat'l Prescription Opiate Litig.*, 290 F. Supp. 3d 1375, 1378-79 (J.P.M.L. 2017).

6365999v1(68026.1)

qualified, temporary stay of these proceedings until such time as the Judicial Panel on Multidistrict Litigation ("JPML") makes a final transfer decision. This Court agrees that transfer is likely, that "deference to the MDL court . . . provides 'the opportunity for the uniformity, consistency, and predictability in litigation that underlies the MDL system[,]'" *Cty. Of San Mateo v. McKesson Corp.*, No. 3:18-cv-04535 (N.D. Cal. Aug. 28, 2018), ECF No. 22, and that such consistency is desirable in cases such as these.

Case No. 4:18-cv-00481, Doc. 50, at 2.  The Court did <u>not</u> reach the issue of federal question jurisdiction, and it noted that "any hardship that might result from this temporary stay is outweighed by the benefits of centralized consideration of the jurisdictional issues by the MDL court." *Id.* at 3.

**B.    After This Court Partially Stayed Plaintiff's First Action, Plaintiff Dismissed And Re-filed In Pima County And Again Alleged That Distributor Defendants Violated Federal Law**

In an unvarnished effort to evade this Court's order, Plaintiff dismissed its action three days later, and it re-filed the current Complaint in Pima County one day after that, on October 9, 2018.  Doc. No. 1, ¶ 1.  The Complaint identifies the same two groups of defendants—the "Marketing Defendants" and the "Distributor Defendants"—and it levels the same basic allegations against both.  Compl. ¶¶ 89-159, 185-193, 520-535.  As to the Distributor Defendants, Plaintiff's central theory of liability remains that Distributors allegedly violated duties aimed at preventing "diversion" of controlled substances, including (1) a duty to report "suspicious orders" for controlled substances; and (2) a duty to halt shipments of suspicious orders. *See, e.g.*, Compl. ¶ 75 (Defendants have failed to "report, and take steps to halt, suspicious orders when they were identified"), ¶ 620 (Defendants "failed to report 'suspicious orders,' which the Distributor Defendants knew were likely to be diverted, to the relevant governmental authorities.").

These are obligations allegedly arising under federal law. *See, e.g.,* 21 C.F.R. § 1301.74(b) (duty to monitor and report suspicious orders of controlled substances). Moreover, although Plaintiff attempted to reduce its citation to federal statutes, the

- 5 -

Complaint still expressly relies on the Controlled Substances Act and related regulations. *See, e.g.*, Compl., ¶ 32 ("The Distributor Defendants saw the profit potential in opioid sales, participated in the conspiracy by ignoring their legal responsibilities under the Controlled Substances Act . . . ."); ¶ 75 (Defendants failed "to report, and take steps to halt, suspicious orders"); ¶ 165 (Defendants must be "registrant[s]" under the federal Controlled Substances Act); ¶¶ 530-535 (Defendants have a duty to prevent "suspicious orders" as defined by federal law, *see also* ¶ 755 (citing 21 C.F.R. § 1301.74(b)); ¶ 534 (acknowledging the regulation of prescription drugs by Congress).  The alleged shipment-halting duty likewise arises out of an interpretation of the CSA by the Drug Enforcement Administration ("DEA"), pursuant to which Distributors allegedly must "decline to ship" suspicious orders for controlled substances.  *See Masters Pharm., Inc. v. DEA*, 861 F.3d 206, 212-13 (D.C. Cir. 2017) (citing *In re Southwood Pharm., Inc.*, 72 Fed. Reg. 36,487 (DEA July 3, 2007), as the source of DEA's "Shipping Requirement"); *see also* Compl. ¶533 ("In addition to reporting all suspicious orders, the Distributor Defendants must also stop shipment on any order which is flagged as suspicious").

The only major change to the Complaint is that Plaintiff has not sued McKesson Corporation, the party that previously removed on the basis of federal officer jurisdiction.

**C.     AmerisourceBergen Drug Corporation Has Notified The JPML Of This Action, Which Will Be Transferred To The Opiate MDL**

AmerisourceBergen Drug Corporation has notified the JPML of this action, and it is likely to be transferred to the Opiate MDL shortly after the JPML's hearing on January 31, 2019.[3]  Declaration of Steven J. Boranian ¶ 2.  Once transferred, the action will become one of numerous others where federal jurisdiction is based on allegations that the Distributor Defendants violated obligations imposed by the CSA and related regulations, as well as by the federal DEA.  *Id.* ¶ 3.  Federal question jurisdiction over the Distributor Defendants is contested in at least 9 other cases, where the transferor district courts have stayed the cases

---

[3] For the JPML's hearing schedule, see http://www.jpml.uscourts.gov/hearing-information.

with remand motions pending or have deferred ruling until after the cases were transferred to the MDL. *Id.* ¶ 4; Doc 20, pp. 9-10.

This action will join those actions for coordinated pretrial proceedings, including a consistent determination of subject matter jurisdiction and a tremendous volume of coordinated discovery against the Defendants. Under the leadership of Tucson Medical Center's attorneys—who are co-lead counsel for all plaintiffs in the Opiate MDL—the MDL plaintiffs have collected millions of pages of documents from Defendants and have taken or will take hundreds of depositions of the Defendants and their employees before the end of January. *Id.* ¶ 5.

Plaintiff's conduct, however, has resulted in substantial delay for its case. But for Plaintiff's objections and its decision to dismiss its first lawsuit and start from scratch in Pima County, this case would already be in the MDL. As it stands, the case is not likely to be transferred until after the JPML's hearing on January 31, 2019. *Id.* ¶ 2.

## III.   Argument

**A.   This Court Should Defer Issues Of Subject Matter Jurisdiction To The Opiate MDL For Consistent Determination**

This Court should join the trend being established by district courts around the country and defer Plaintiff's remand motion to the Opiate MDL for coordinated and consistent handling. Plaintiff's only argument in support of remand is their assertion that courts have "unanimously rejected" federal question removals such as AmerisourceBergen Drug Corporation's removal in this action. But Plaintiff is telling only one side of the story. The reality is that a growing majority of judges have <u>not</u> granted remand when presented with remand motions in cases where Distributor Defendants have removed on federal question jurisdiction. Plaintiff's motion cites 6 orders remanding such cases,[4] but Plaintiff ignores the nine other cases where Distributor Defendants removed on federal question

---

[4] The list of remand orders that Plaintiff presents in its remand motion includes only 6 cases where federal jurisdiction was based on federal questions under the CSA. *See* Opp., Exhs. A-F. The others raised different bases for federal jurisdiction and are inapposite to this case. *See* Opp., n. 5.

6365999v1(68026.1)

jurisdiction and district judges have deferred jurisdictional issues to the MDL.  *See* cases cited *supra* note 1 and in Reply Brief in Support of Motion to Stay, Doc. 20, at pp. 9-10. That count does not include this Court's prior order, which likewise deferred jurisdiction to the Opiate MDL when presented with both federal question *and* federal officer jurisdiction. This Court should issue a similar order this second time around and stay proceedings pending the JPML's transfer decision.

**B.     Plaintiff's Complaint Necessarily Raises Disputed and Substantial Issues of Federal Law**

If this Court reaches the merits of subject matter jurisdiction, it will see that it has jurisdiction over this action because Plaintiff's newly filed Complaint continues to raise substantial issues of federal law.

Federal courts have removal jurisdiction over "any civil action brought in a State court of which the district courts of the United States have original jurisdiction," 28 U.S.C. § 1441(a), and original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331. "A single claim over which federal-question jurisdiction exists is sufficient to allow removal." *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 194 (2d Cir. 2005); *see Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 563 (2005).

Even where state law creates the cause of action, it may nonetheless raise a federal question sufficient to warrant removal jurisdiction. Under the Supreme Court's *Grable* and *Gunn* decisions, "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258; *see also Grable*, 545 U.S. at 315. "Where all four of these requirements are met . . . jurisdiction is proper because there is a serious federal interest in claiming the advantages thought to be inherent in a federal forum, which can be vindicated without disrupting Congress's intended division of labor between state and federal courts." *Gunn*, 568 U.S. at

258 (quotation marks omitted). Courts often find these factors to be satisfied in cases where, as here, state law claims are predicated on violations of federal statutes governing complex, nationwide regulatory schemes for which uniformity is essential.[5]

### 1) The Complaint "necessarily raises" a federal issue

An action "necessarily raises" a federal question when "the right to relief depends upon the construction or application of federal law." *PNC Bank*, 189 F. App'x at 104 n.3. "[A]n action under 28 U.S.C. § 1331(a) arises . . . *if the action requires construction of a federal statute*, or at least a distinctive policy of a federal statute requires the application of federal legal principles." *V.I. Hous. Auth. v. Coastal Gen. Constr. Servs. Corp.*, 27 F.3d 911, 916 (3d Cir. 1994) (emphasis added); *see also Merrell Dow Pharms. v. Thompson*, 478 U.S. 804, 808–09 (1986) (federal question jurisdiction exists if "vindication of a right under state law necessarily turn[s] on some construction of federal law" (internal citation omitted)).

In determining whether state law claims turn on construction or application of federal law, the Court must "begin by considering the duty underlying each claim." *NASDAQ*, 770 F.3d at 1020. "A state-law claim 'necessarily' raises federal questions where the claim is affirmatively 'premised' on a violation of federal law," *Jacobson*, 824 F.3d at 315, or where the "singular duty" underlying the claim arises under federal law, *NASDAQ*, 770 F.3d at 1021; *see also Commun. Mgt. Services, LLC v. Qwest Corp.*, 726 Fed. App'x 538, 540 (9th Cir. 2018) (where complaint "alleges that [a defendant] violated a duty supplied by federal law," it therefore "necessarily raise[s] a stated federal issue which is both actually disputed and substantial").

---

[5] *See, e.g.*, *PNC Bank, N.A. v. PPL Elec. Utils. Corp.*, 189 F. App'x 101, 104 n.3 (3d Cir. 2006) (state law claim based on violation of Internal Revenue Code "gives rise to federal-question jurisdiction" under *Grable*); *Broder*, 418 F.3d at 196 (state law claims premised on cable provider's alleged violations of Communication Act's uniform rate requirement satisfy "*Grable* test for federal-question removal jurisdiction"); *NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d 1010, 1031 (2d Cir. 2014) (state law claims premised on violations of Exchange Act "necessarily raise disputed issues of federal law of significant interest to the federal system as a whole"); *New York ex rel. Jacobson v. Wells Fargo Nat'l Bank, NA*, 824 F.3d 308, 315–18 (2d Cir. 2016) (state law claims based on defendant's alleged violation of Internal Revenue Code satisfy *Grable*); *Ranck v. Mt. Hood Cable Regulatory Comm'n*, 2017 WL 1752954, at *5 (D. Or. May 2, 2017) (state law claims based on violations of Cable Communications Policy Act satisfy *Grable*).

Here, Plaintiff's claims necessarily raise federal issues because they are premised on Distributors' alleged violations of purported legal duties supplied by the CSA and its implementing regulations, including the alleged duties to report and halt suspicious orders. *See* 21 C.F.R. § 1301.74(b) (setting forth reporting requirement); *Masters Pharm*, 861 F.3d at 212-13 (discussing DEA's interpretation of regulations to limit shipping of prescription drugs). Despite Plaintiff's attempt to remove reference to federal law, Plaintiff's reliance on federal law is nonetheless evident on the face of the Complaint. That is to say, Plaintiff attempts to emphasize Arizona law, but alleges violations of duties that arise *only* under federal law. *See Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987) (federal jurisdiction exists when federal question is presented "on the face of the plaintiff's properly pleaded complaint"); *Lontz v. Tharp*, 413 F.3d 435, 439 (4th Cir. 2005) (removal "is appropriate if the face of the complaint raises a federal question").

Plaintiff's own allegations demonstrate that its claims are affirmatively premised on alleged violations of the federal CSA and arise from alleged duties (to report and halt suspicious orders) under federal law. Throughout the Complaint, Plaintiff relies on federal laws and regulations to establish these and other duties, and Plaintiff repeatedly pleads that Distributors' alleged violations of these duties give rise to Plaintiff's causes of action. *See, e.g.*, Compl. ¶ 533 ("In addition to reporting all suspicious orders, the Distributor Defendants must also stop shipment on any order which is flagged as suspicious"); *id.* ¶¶ 75 (Defendants failed "to report, and take steps to halt, suspicious orders when they were identified"), 534 ("Those prescription drugs are regulated for the purposes of providing a 'closed' system intended to reduce widespread diversion of these drugs out of legitimate channels into the illicit market") (citing 1970 U.S.C.C.A.N. 4566, 4571-72), 537 ("defendants have "publicly acknowledged" that they are "responsible for reporting suspicious orders"), 620 ("The Distributor Defendants failed to report 'suspicious orders,' which the Distributor Defendants knew were likely to be diverted, to the relevant governmental authorities.") 755 (defining "suspicious orders" under federal law).

As these and other citations demonstrate, Plaintiff's claims against Distributors rest squarely on its allegations that Distributors breached duties allegedly arising out of the CSA and its implementing regulations, or from the DEA's interpretation of a prescription drug distributor's legal obligations. Despite its attempt to scrub the Complaint of federal law, Plaintiff's invocation of the CSA undergirds its entire theory of liability against Distributors.

Although a plaintiff "may avoid federal jurisdiction by *exclusive* reliance on state law," *Caterpillar*, 482 U.S. at 392 (emphasis added), Plaintiff's claims here have no such exclusive state law basis. Plaintiff refers to Arizona law that it claims give rise to the duties to report suspicious orders for prescription opioids, *see, e.g.*, Compl. ¶¶ 165, 530, but the provisions of Arizona law that it cites do not impose an independent requirement, much less duty, on wholesale distributors to report or halt shipments of suspicious orders for prescription opioids.[6]   Plaintiff cannot cite any state law authority that requires wholesale distributors to halt or stop shipments of suspicious orders for controlled substances. To the contrary, Plaintiff can rely only on federal law in support of those requirements. *See, e.g.*, *id.* ¶¶ 532, 755.

Moreover, even if Plaintiff could prove some of its claims against Distributors without establishing a violation of federal law, this Court still has federal-question jurisdiction because "[a] single claim over which federal-question jurisdiction exists is sufficient to allow removal" of the entire action. *Broder*, 418 F.3d at 194; *see City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 166 (1997) ("Nothing in the jurisdictional statutes suggests that the presence of related state law claims somehow alters the fact that

---

[6] Indeed, *none* of the Arizona laws and regulations that Plaintiff cites establishes an independent state law requirement or duty to refuse to fill suspicious orders of prescription drugs. Even so, to the extent Plaintiff alleges that the Defendants' violation of Arizona law is based on a violation of "applicable federal law," the Complaint raises a claim that necessarily requires the Court to interpret, construe, and apply federal law. *See Merrell Dow*, 478 U.S. at 808-09. Furthermore, while Arizona's CSA requires distributors to be "registrants" under the federal CSA, it imposes no independent requirements with respect to suspicious orders. Similarly, A.A.C. R4-23-604 applies solely to drug manufacturers, while A.A.C. R4-26-605 requires only that distributors comply with federal law in the record-keeping, quality control, and quarantine of drugs. Neither of these regulations imposes any requirement independent of federal law with respect to halting or refusing to ship suspicious orders.

- 11 -

[the] complaints, by virtue of their federal claims, were 'civil actions' within the federal courts' 'original jurisdiction.'"). Because, as noted above, at least some of Plaintiff's causes of action turn on a showing that Distributors violated the CSA and its implementing regulations, federal question jurisdiction exists.

To the extent Arizona law incorporates the CSA, the result is the same. As one court explains, the "incorporation of a federal law into the state statute on which the plaintiffs' cause of action is grounded" necessarily raises an "embedded federal question." *R.I. Fishermen's All.*, 585 F.3d at 49; *see also Gilmore v. Weatherford*, 694 F.3d 1160, 1173 (10th Cir. 2012) (state law conversion claim necessarily raises federal question where "Oklahoma personal property law includes and incorporates the federal requirement"); *but see Wander v. Kaus*, 304 F.3d 856 (9th Cir. 2002).

In short, Plaintiff's purported state law causes of action hinge on their allegations that Distributors breached requirements arising out of the CSA and its implementing regulations. To determine whether Distributors breached those requirements, a court would necessarily have to interpret and apply the CSA. Plaintiff's claims therefore necessarily raise federal issues.

### 2)      The parties "actually dispute" the federal issue

Plaintiff does not dispute—and thus concedes—that the federal issues raised by the Complaint are "actually disputed." Specifically, the parties contest whether the CSA and its implementing regulations in fact give rise to duties to report and halt suspicious orders for prescription opioids, the precise scope and contours of any duties that might exist under the CSA, and whether Distributors violated these alleged duties by failing to report and halt suspicious orders.

### 3)      The federal issues are "substantial."

The Supreme Court has explained that "[t]he substantiality inquiry under *Grable* looks . . . to the importance of the issue to the federal system as a whole." *Gunn*, 568 U.S. at 260. A federal issue "can be important for many reasons," including because (i) "state

6365999v1(68026.1)

adjudication would undermine the development of a uniform body of federal law"; (ii) "resolution of the issue has broad significance for the federal government"; or (iii) "the case presents a nearly pure issue of law" that would apply to other cases. *Bd. Comm'rs Se. La. Flood Prot. Auth.-E. v. Tenn. Gas Pipeline Co.*, 850 F.3d 714, 724 (5th Cir. 2017). Exercising federal jurisdiction in such cases "captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers." *Grable*, 545 U.S. at 312.

The federal issues presented here are important to the federal system as a whole for three reasons. **First**, there is a strong federal interest in ensuring a uniform interpretation of the CSA. **Second**, the existence and scope of obligations rising under the CSA has broad significance to the federal government, including by affecting the DEA's ability to enforce the CSA. **Third**, the resolution of these legal issues will have application not only in this case, but also in the hundreds of other opioid-related actions pending elsewhere.

> a) **There is a federal interest in ensuring uniform interpretation of the CSA**

Courts have often found federal issues to be sufficiently substantial where they raise "questions [that] involve aspects of . . . complex federal regulatory scheme[s] . . . as to which there is a serious federal interest in claiming the advantages thought to be inherent in a federal forum." *Broder*, 418 F.3d at 195 (quotation marks omitted). Such rulings are especially common where federal agencies are responsible for implementing a national regulatory system for which uniformity is essential. In *NASDAQ*, for example, the Second Circuit ruled that "the disputed federal issue in th[e] case—whether [the defendant] violated its Exchange Act obligation to provide a fair and orderly market in conducting an IPO—is sufficiently significant to the development of a uniform body of federal securities regulation to satisfy the requirement of importance to the federal system as a whole." 770 F.3d at 1024. Likewise, in *Jacobson*, the Second Circuit held that "minimizing uncertainty over the tax

treatment of mortgage-backed securities, as Congress intended, fully justif[ied] resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." 824 F.3d at 318.

Similarly, Plaintiff's claims would require this Court to determine the existence and scope of Distributors' obligations under the CSA and whether Distributors breached those obligations, implicating the uniformity concerns addressed above. In enacting the CSA, Congress stated that it was "providing the legitimate drug industry with a *unified* approach to narcotic and dangerous drug control." H.R. Rep. No. 91-1444 (1970), *reprinted in* 1970 U.S.C.C.A.N. 4566, 4572 (emphasis added). Plaintiff's claims thus "involve aspects of the complex federal regulatory scheme applicable to" the national prescription drug supply chain, *Broder*, 418 F.3d at 195, and are "sufficiently significant to the development of a uniform body of [controlled substances] regulation to satisfy the requirement of importance to the federal system as a whole," *NASDAQ*, 770 F.3d at 1024 (quotation marks omitted). Furthermore, "minimizing uncertainty over" reporting and shipping obligations under the CSA "justifies resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Jacobson*, 824 F.3d at 317–18.

Resort to a federal forum is particularly warranted here because Plaintiff's action raises the same theory against Distributors as plaintiffs have raised in more than a thousand cases pending in the MDL. If this case is allowed to proceed in federal court and transferred to the MDL, the MDL court will be able to ensure uniform construction and application of the CSA and any alleged obligations or duties arising under the CSA, thus achieving Congress's goal of a "unified approach" to regulating controlled substances. If, on the other hand, this case were remanded to the state court, nothing would prevent that court from construing and applying the federal CSA in a manner inconsistent with the MDL court.

        **b)**    **The federal issues presented in this case have broad significance for the federal government**

6365999v1(68026.1)

1    The federal government has made clear the effect that the opioid litigation will have

2    on its ability to enforce the CSA. Most notably, the Department of Justice filed a Statement

3    of Interest in the MDL, asserting the federal government's interests in its "law enforcement

4    and legal activities in conjunction . . . with the [MDL]," specifically including "[c]riminal

5    and civil tools available *under the* [*CSA*]." *In re: Nat'l Prescription Opiate Litig.*, No. 1:17-

6    md-02804 (N.D. Ohio Mar. 1, 2018), ECF No. 161, at 7 (emphasis added).  *See* Boranian

7    Decl., ¶ 6, Ex. 1.

8    Allowing state courts to resolve claims premised on violations of the CSA—to

9    determine the existence and scope of obligations or duties under the CSA—creates a

10   potential for inconsistent interpretations across jurisdictions. *See* 21 U.S.C. § 903 (although

11   Congress did not intend to "occupy the field" of controlled substances regulation, CSA pre-

12   empts inconsistent state law). Allowing state courts to issue conflicting interpretations of the

13   CSA would inevitably undermine the federal government's efforts to enforce the statute and

14   sow confusion among federally regulated entities.

15   **c)     This case presents a nearly pure issue of law that would have**

16   **applications to other federal cases**

17   In assessing whether Distributors breached duties arising out of the CSA, the Court

18   must determine not only Distributors' conduct, but also whether that conduct falls within the

19   scope of the CSA and any alleged duties arising under the CSA. That is, the Court must

20   examine "the contours of [the] federal duty," "the scope of that duty," and "whether

21   [Distributors' conduct] amounted to a breach of that duty." *NASDAQ*, 770 F.3d. at 1023.

22   That analysis will require the Court to determine whether the CSA and its implementing

23   regulations in fact give rise to the duties to report and halt suspicious orders, to whom such

24   duties are owed, what any such duties entail, what constitutes a "suspicious" delivery under

25   the CSA's implementing regulations, what actions should have been taken to resolve those

26   suspicions or "halt" the shipment, whether existing processes satisfy federal reporting

27   guidelines, and other disputes arising under federal regulations. These questions present

28

1   "nearly pure issue[s] of law" that would necessarily "have applications to other federal

2   cases," *Tenn. Gas Pipeline*, 850 F.3d at 724, including to the hundreds of actions pending in

3   the MDL.

4           d)      **A federal case of action is not required for a complaint to raise**

5                   **substantial federal issues**

6           To the extent Plaintiff suggests that the lack of a federal cause of action renders

7   jurisdiction lacking, that argument is inconsistent with *Grable*.  In *Grable*, the Supreme

8   Court held that lack of a federal cause of action does *not* foreclose federal-question

9   jurisdiction, and concluded that the federal issue presented in that case was substantial

10  notwithstanding the lack of a federal cause of action. *See Broder*, 418 F.3d at 196 ("The

11  *Grable* Court found this last requirement to be satisfied even in the absence of a private right

12  of action[.]").

13          Thus, the fact that the CSA does not afford Plaintiff a private right of action does not

14  diminish the substantiality of the federal questions here, particularly when federal courts

15  have exclusive jurisdiction to enforce the CSA.

16          **4)      Federal jurisdiction will not disrupt the Congressionally-approved**

17                  **balance of federal-state judicial responsibilities**

18          Finally, the federal issues presented by Plaintiff's Complaint are capable of resolution

19  in federal court "without disrupting the federal-state balance approved by Congress." *Gunn*,

20  568 U.S. at 258. Federal courts exclusively hear challenges to DEA authority to enforce the

21  federal CSA against distributors.[7] Similarly, federal courts have exclusive jurisdiction over

22  proceedings seeking to enjoin violations of the CSA. *See* 21 U.S.C. § 882(a) ("The district

23  courts of the United States and all courts exercising general jurisdiction in the territories and

24  possessions of the United States shall have jurisdiction in proceedings . . . to enjoin

25  ─────────────────
    [7] *See, e.g.*, *PDK Labs. Inc. v. U.S. Drug Enf't Admin.*, 362 F.3d 786 (D.C. Cir. 2004)
26  (challenge to DEA program enforcing CSA to prevent diversion of ephedrine); *Admin.
    Subpoena Walgreen Co. v. U.S. Drug Enf't Admin.*, 913 F. Supp. 2d 243 (E.D. Va. 2012)
27  (resolving registrant's motion to require DEA to return subpoenaed documents); *Cardinal
    Health, Inc. v. Holder*, 846 F. Supp. 2d 203 (D.D.C. 2012) (challenge under Administrative
28  Procedure Act to DEA order suspending registration of distribution facility).

1  violations of this subchapter."). Thus, federal courts are already the exclusive fora for

2  determining the permissible scope of restraints on Distributors under the federal CSA.

3  **C.   The Court Should Deny Fees and Costs**

4  AmerisourceBergen Drug Corporation exercised its statutory right to remove an

5  action to federal court where the face of the Complaint expressly relied on federal law.  The

6  removal also restored this action to exactly the posture where it stood before Plaintiff set out

7  to evade this Court's prior order—in this Court and subject to this Court's supervision.  It is

8  the same posture in which multiple cases throughout the country likewise stand, having been

9  removed on the basis of the same or similar federal questions.  That is not sanctionable

10  conduct, and as the points and authorities above demonstrate, the removal of this action was

11  proper and justified.  This Court should summarily deny Plaintiff's request for fees and

12  costs.[8]  *See Martin v. Franklin Capital Corp.*, 546 US 132, 136 (2005) ("[A]bsent unusual

13  circumstances, attorney's fees should not be awarded when the removing party has an

14  objectively reasonable basis for removal."); *Lussier v. Dollar Tree Stores, Inc.*, 518 F.3d

15  1062, 1066 (9th Cir. 2008) (denying fees where removal was based on reasonable

16  arguments).

17  **IV.   Conclusion**

18  For the reasons set forth above, ABDC respectfully requests that the Court deny

19  Plaintiff's motion to remand and its request for fees and costs.

20  DATED this 13th day of November, 2018.

21  JENNINGS STROUSS & SALMON, P.L.C.

22

23  By: *s/ John J. Kastner, Jr.*
        John J. Kastner, Jr.

24      Jay A. Fradkin

25

_____

26  [8] This Court should deny Plaintiff's request also because fees and costs under Section
1447(c) are limited to those "incurred as a result" of the removal, and Plaintiff has provided

27  no evidence upon which this Court could determine any amount of fees and/or costs, let
alone those incurred "as a result" of the removal.  *See Avitts v. Amoco Production Co.*, 111

28  F.3d 30, 32 (5th Cir. 1997).

- 17 -

*Attorneys for Defendant AmerisourceBergen Drug Corporation*

REED SMITH LLP

By: *s/Steven J. Boranian*
   *Attorneys for Defendant*
   *AmerisourceBergen Drug Corporation*

## CERTIFICATE OF FILING

I hereby certify that on November 13, 2018, I electronically transmitted the attached document to the Clerk's office using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to the following registrants:

Steven C. Mitchell
steve@mitchellspeights.com
katie@mitchellspeights.com
sam@mitchellspeights.com

Samuel F. Mitchell
steve@mitchellspeights.com
sam@mitchellspeights.com
katie@mitchellspeights.com

Steven James Boranian
sboranian@reedsmith.com
drothschild@reedsmith.com

Jay A. Fradkin
JFradkin@jsslaw.com
VRodriguez@jsslaw.com

C Scott Jones
sjones@lockelord.com
rhagerich@lockelord.com

John P McDonald
jpmcdonald@lockelord.com

Adam Weisman
sara@hrtucson.com
adam@hrtucson.com

- 18 -

6365999v1(68026.1)

**Copy e-mailed to other counsel listed below:**

Linda Singer
lsinger@motleyrice.com
*Attorney for Plaintiff*

John W. ("Don") Barrett
dbarrett@barrettlawgroup.com
*Attorney for Plaintiff*

G. Robert Blakey
Blakey.1@nd.edu
*Attorney for Plaintiff*

Laura Sixkiller
laura.sixkiller@dlapiper.com
Mark S. Cheffo
Mark.Cheffo@dechert.com
Hayden A. Coleman
Hayden.Coleman@dechert.com
Jae Hong Lee
Jae.Lee@dechert.com
*Attorneys for Purdue Pharma L.P., Purdue Pharma Inc., and The Purdue Frederick
Company, Inc.*

Jeremy C. Johnson (#025203)
jjohnson@JSHFIRM.com
David C. Potts (#030550)
dpotts@JSHFIRM.com
*Attorneys for Amneal Pharmaceuticals, LLC*

Christina M. Vitale
christina.vitale@morganlewis.com
Steven A. Reed
steven.reed@morganlewis.com
James Collie IV
collie.james@morganlewis.com

*Attorneys for Teva Pharmaceuticals USA, Inc.; Cephalon, Inc.; Watson
Laboratories, Inc.; Actavis LLC; and Actavis Pharma, Inc. f/k/a Watson Pharma,
Inc.*

Charles C. Lifland
clifland@omm.com
*Attorney for Johnson & Johnson; Janssen Pharmaceuticals, Inc.; Janssen
Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Ortho-McNeil-Janssen
Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc.*

Daniel G. Jarcho
daniel.jarcho@alston.com
Cari K. Dawson
cari.dawson@alston.com
Jenny A. Mendelsohn
jenny.mendelsohn@alston.com

6365999v1(68026.1)

1 | *Attorneys for Noramco, Inc.*

2 | John A. McCauley
JAMcCauley@Venable.com
3 | James K. O'Connor
JKO'Connor@Venable.com
4 | *Attorneys for Abbott Laboratories and Abbott Laboratories Inc.*

5 | Kevin M. Sadler
kevin.sadler@bakerbotts.com
6 | David T. Arlington
david.arlington@bakerbotts.com
7 | *Attorneys for Depomed, Inc., n/k/a Assertio Therapeutics, Inc.*

8 | John D. Lombardo
John.Lombardo@arnoldporter.com
9 | *Attorney for Endo Health Solutions Inc., and Endo Pharmaceuticals Inc.*

10 | J. Matthew Donohue
matt.donohue@hklaw.com
11 | Joseph L. Franco
joe.franco@hklaw.com
12 | *Attorneys for Insys Therapeutics, Inc.*

13 | Rocky C. Tsai
Rocky.Tsai@ropesgray.com
14 | *Attorney for Mallinckrodt plc, Mallinckrodt LLC, and SpecGx LLC*

15 | Eric Witt (ABN 030235)
ewitt@bakerlaw.com
16 | Enu Mainigi
emainigi@wc.com
17 | F. Lane Heard III
lheard@wc.com
18 | Steven M. Pyser
spyser@wc.com
19 | Ashley W. Hardin
ahardin@wc.com
20 | *Attorneys for Cardinal Health, Inc.*

21 | James W. Matthews
jmatthews@foley.com
22 | Katy E. Koski
kkoski@foley.com
23 | Redi Kasollja
rkasollja@foley.com
24 | *Attorneys for Anda, Inc.*

25 | Kathleen L. Matsoukas
kathleen.matsoukas@btlaw.com
26 | Oni N. Harton
oni.harton@btlaw.com
27 | *Attorneys for H.D. Smith, LLC f/k/a/ H.D. Smith Wholesale Drug Co.*

28 |

6365999v1(68026.1)

By: _s/ Sonia M. Leon, Legal Assistant_____

6365999v1(68026.1)